IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Rackim Lavan Williams,                )  | Case No. 8:12-cv-365-JFA-JDA |
|                                           ) | |
|         Plaintiff,                )  | **REPORT AND RECOMMENDATION** |
|                                          )  | **OF MAGISTRATE JUDGE** |
|         v.             )   | |
|                                           )   | |
| Capt. P. Jones, Capt. A. Wilson, Sgt. H.    )  | |
| Wright, Lt. S. Toland, Sgt. R. Brown, Lt.  )   | |
| E. Hambrick,[1] and Lt. K. Parker,           )     | |
|                                          )   | |
|        Defendants.              )      | |
| _____ ) | |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 34.] Plaintiff is proceeding pro se and brings this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983, and to submit findings and recommendations to the District Court.

Plaintiff filed this action against Defendants Capt. P. Jones ("Jones"), Capt. A. Wilson ("Wilson"), Sgt. H. Wright ("Wright"), Lt. S. Toland ("Toland"), Sgt. R. Brown ("Brown"), Lt. E. Hambrick ("Hambrick"), and Lt. K. Parker ("Parker") (collectively, "Defendants"). [Doc. 1.] Defendants filed a motion for summary judgment on June 26, 2012. [Doc. 34.] By Order filed June 26, 2012 pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 35.]

---

[1] Although the Complaint spells this Defendant's last name "Hambricky," he has indicated his last name should be spelled "Hambrick." [Doc. 34-10 at 1 ¶ 2.]

On July 30, 2012, Plaintiff filed his response in opposition to Defendants' motion. [Doc. 39.] On August 9, 2012, Defendants filed a reply. [Doc. 45.] The motion is now ripe for review.

## BACKGROUND

Plaintiff, who was incarcerated at Broad River Correctional Institution at the time of the alleged events giving rise to this action,[2] filed this action generally alleging Defendants used excessive force when removing Plaintiff from his cell. [Doc. 1.] Specifically, Plaintiff alleges that, on February 23, 2011, he got into an argument with Jones about Plaintiff's legal materials. [*Id.* at 3.] Later, Jones returned to Plaintiff's cell to give Plaintiff dinner. [*Id.*] Plaintiff and Jones argued again, and Plaintiff threw water on Jones' shirt. [*Id.*] Hambrick gassed Plaintiff, and Jones allegedly told Hambrick and Parker that Plaintiff was his. [*Id.*]

Plaintiff alleges that, about an hour later, inmates on the wing announced, "They are rolling." [*Id.* at 3–4.] Plaintiff looked through the window connected to the food flap in his cell door and saw Jones, Toland, Hambrick, Wright, Parker, Brown, and Wilson approaching Plaintiff's cell door. [*Id.* at 4.] Plaintiff alleges the officers had no protective equipment and no camera and were dressed in regular officer clothing. [*Id.*] According to Plaintiff, Wright carried a large transparent shield. [*Id.*] Plaintiff alleges he turned around at his door so the officers could open the food flap and handcuff Plaintiff. [*Id.*] Plaintiff alleges Jones ordered Plaintiff to step forward and get on his knees, drop whatever was in his hands, and put his hands on his head. [*Id.*] Then, while on his knees, Plaintiff was

---

[2] Plaintiff was transferred to Perry Correctional Institution during the pendency of this action. [*See* Doc. 46 (notice of change of address).]

2

ordered to scoot up toward the center of the cell. [*Id.*] Plaintiff alleges he complied with these orders and then, the door opened and Plaintiff felt the force of a hard shield across the back of his head, knocking him on his stomach. [*Id.*] Plaintiff alleges Jones kicked Plaintiff in the stomach, and someone else hit Plaintiff in his knees with what felt like a hard piece of metal. [*Id.*] Plaintiff alleges someone began hitting Plaintiff in the face after he screamed out in pain and asked the officers to stop. [*Id.*] Plaintiff alleges the beating continued for about a minute and a half until Jones ordered the officers to stop and to put handcuffs and shackles on Plaintiff. [*Id.*] The officers complied, lifted Plaintiff from the floor, and took Plaintiff to medical. [*Id.* at 4–5.] Plaintiff alleges he was treated for a busted lip and knee and continues to have pain in his knee. [*Id.* at 5.]

Plaintiff seeks to have counsel appointed, to transfer to a different institution,[3] and to have criminal charges brought against Defendants.[4] [*Id.* at 6.] Plaintiff also seeks money damages. [*Id.*]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574

---

[3] The Court notes Plaintiff has already been transferred from Broad River Correctional Institution [*see* Doc. 46 (notice of change of address)]; accordingly, this request is now moot.

[4] To the extent Plaintiff seeks to assert criminal charges against Defendants, that claim fails. As a private citizen, Plaintiff has no "judicially cognizable interest" in the criminal prosecution of another. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Further, a private citizen has no authority to initiate a criminal prosecution. *Cok v. Costentino*, 876 F.2d 1, 2 (1st Cir. 1989). Prosecutorial discretion resides in the state or federal prosecuting authority and not this Court. As such, Plaintiff prays for relief that cannot be granted.

F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355,

365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Exhaustion of Administrative Remedies**

Defendants first argue they are entitled to summary judgment because Plaintiff failed to properly exhaust his administrative remedies before filing this action. [Doc. 34-1 at 5–7.] The Court disagrees.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or

7

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative

grievance process). *But see Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad"). Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes Step 2 of the South Carolina Department of Corrections ("SCDC") grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court. *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007); *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint. *Jones*, 549 U.S. at 211–12; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust. *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

The SCDC grievance policy provides that, after unsuccessfully attempting to informally resolve a grievance, inmates may complete a Form 10-5, Step 1, and submit the form to the proper employee within fifteen days of the alleged incident about which the inmate complains. [Doc. 34-4 at 6.] Within ten working days, the grievance is entered into the automated system and given to the Inmate Grievance Coordinator. [*Id.*] Within ten working days of receiving the grievance, the Inmate Grievance Coordinator completes the additional text for the grievance and attempts to resolve the matter informally. [*Id.*] No later than 40 days from the time the text for the grievance has been entered into the automated system, the Warden responds to the inmate in writing. [*Id.*] The response is served by the Inmate Grievance Coordinator to the inmate within five days, and the inmate signs and dates the response to acknowledge receipt. [*Id.*] If the inmate is not satisfied with the decision, he may appeal it by completing a Form 10-5a, Step 2, and submitting the Form to the Inmate Grievance Coordinator within five days of the receipt of the response by the inmate. [*Id.* at 7.] The Inmate Grievance Coordinator forwards the Step 2, the Step 1, and copies of necessary documentation to the Inmate Grievance Branch within five days; and the responsible official will render the final decision on the grievance within 60 days from the date the Inmate Grievance Coordinator received the appeal of the Warden's decision. [*Id.*] The Inmate Grievance Coordinator then serves the response to the inmate within five working days, and the inmate signs and dates the response to acknowledge receipt. [*Id.*] The decision of the responsible official is the final response in the matter. [*Id.*] The policy states that, "in most instances, grievances will be processed from initiation to final disposition within 125 days . . . ." [*Id.* at 5.]

Here, Plaintiff filed a Step 1 grievance on March 4, 2011. [Doc. 34-3 at 14–15.] He filed this action on February 3, 2012,[5] before receiving a response to his Step 1 grievance. The Warden issued a response to Plaintiff's Step 1 grievance, denying the grievance, on April 23, 2012. [Doc. 34-3 at 16.] On April 26, 2012, Plaintiff filed a Step 2 grievance appealing the decision. [Doc. 34-3 at 17.] Plaintiff's Step 2 grievance was denied on May 31, 2012. [*Id.*] Defendants contend that, because Plaintiff did not fully complete the grievance process before filing this action, he has failed to properly exhaust his administrative remedies, and the present action should be dismissed. [Doc. 34-1.]

Plaintiff concedes he had not filed a Step 2 grievance when he filed this action, but he filed this case after waiting ten and a half months and not receiving a response to his Step 1 grievance. [Doc. 1 at 3.] "When a prisoner files a grievance and has not received a timely determination, the grievance may be considered exhausted under the PLRA." *Williams v. Loyd*, No. 2:09-2289-JFA-RSC, 2010 WL 3609790, at *4 (D.S.C. Apr. 28, 2010) (listing cases holding that administrative remedies are deemed exhausted when prison officials fail to timely respond to a properly filed grievance), *Report and Recommendation adopted by* 2010 WL 3609512 (D.S.C. Sept. 13, 2012). When Plaintiff filed this action, eleven months had passed since he filed his Step 1 grievance. Given the amount of time that had elapsed, Plaintiff's grievance should be considered exhausted under the PLRA. Accordingly, Defendants are not entitled to summary judgment because SCDC interfered

---

[5] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on February 3, 2012. [Doc. 1-1 (envelope stamped as received by prison mailroom on February 3, 2012).]

11

with Plaintiff's ability to exhaust his administrative remedies when it failed to respond to Plaintiff's grievance in a timely fashion.[6]

**Eleventh Amendment Immunity**

Defendants argue they, as current and former employees or officials of the SCDC, are not subject to suit under § 1983 when sued in their official capacities. [Doc. 34-1 at 7-8.] The Court agrees.

The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims against Defendants in their official

---

[6]Although Defendants allege Plaintiff's grievance was forwarded to the Division of Investigations, Defendants fail to address how that impacts the timeline for responding to grievances or why it took the Division of Investigations over thirteen months to respond to the grievance. Moreover, judges in this District have found grievances to be considered exhausted when the grievances were forwarded to the Division of Investigations and not processed within the time limits established by the SCDC grievance policy. *See, e.g.*, *Williams v. Loyd*, 2010 WL 3609790.

capacities, those claims must be dismissed because Defendants are entitled to immunity pursuant to the Eleventh Amendment.

**Excessive Force Claim**

The use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillian,* 503 U.S. 1, 5 (1992). To state an excessive force claim, an inmate must show (1) that the correctional officers acted with a sufficiently culpable state of mind and (2) that the harm inflicted on the inmate was sufficiently serious. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The subjective component requires the inmate to demonstrate the officer applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6–7. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Wilson v. Seiter,* 501 U.S. 294, 299 (1991). When evaluating whether the use of force was wanton or unnecessary, the Court considers (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the officials, and (4) any efforts made to temper the severity of a forceful response. *Hudson,* 503 U.S. at 7 (citations omitted). The objective component of an excessive force claim is not nearly as demanding to establish because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Id.* at 9 (internal citation omitted).

Here, there is no dispute officers used force against Plaintiff when they secured him to remove him from his cell; the issue is whether the officers used excessive force. The facts are in dispute about whether the force used was necessary to remove Plaintiff from his cell. Defendants contend force was used after Plaintiff posed a threat to them and other officers [Doc. 34-1 at 11] but fail to address how they were threatened through Plaintiff's cell door, after Plaintiff had been gassed, or why they remained threatened after a lapse of at least one hour as alleged by Plaintiff.[7] The facts are also in dispute as to whether Plaintiff complied with directives given by officers before they entered his cell. While Wilson alleges Plaintiff refused to get on the floor for extraction [Doc. 34-6 at 2 ¶ 3] and Jones and Parker allege noncompliance with directives [Docs. 34-5 at 2 ¶ 3; 34-11 at 2 ¶ 3], Plaintiff avers he obeyed Jones' orders and was hit from behind [Doc. 39-1 at 4–6 ¶¶ 11–16]. Plaintiff has also submitted an affidavit from the inmate in the cell across from Plaintiff's, wherein the inmate avers Plaintiff's back was to the door when the officers entered the cell, and Wright knocked Plaintiff to the floor with a shield. [Doc. 39-2 at 9.]

Crediting Plaintiff's version of what occurred, it cannot be said that force was applied in a good faith effort to maintain or restore discipline. Under these facts, it cannot be said Defendants were trying to restore order an hour after Plaintiff threw water on Jones. Nor can it be said Plaintiff was not obeying directives when the officers entered his cell. The Court is unable to assess the relationship between the need and the amount of force that was used. Further, the Court is unable to determine whether there was any reasonably

---

[7]According to Plaintiff's affidavit, Defendants returned to his cell about an hour and a half after he threw water on Jones [Doc. 39-1 at 3 ¶ 7], though the Complaint alleges Defendants returned an hour later [Doc. 1 at 3]. Parker concedes it was "sometime later" when the officers returned to secure Plaintiff. [Doc. 34-11 at 2 ¶ 3.]

14

perceived threat that the application of force was intended to quell or whether any effort was made to temper the severity of a forceful response. The extent of Plaintiff's injuries are also in conflict. Plaintiff was seen by medical following the incident, but the notes are completely inconsistent. [*See, e.g.*, Doc. 34-2 at 7 (Report on the Use of Force, indicating no medical treatment was required), 9 (Report on the Use of Force, indicating a cut on Plaintiff's lip that was cleaned with antimicrobial soap and dressed and also mentioning something illegible about Plaintiff's knee).] Because this matter must await determination of the facts now in conflict, qualified immunity as set forth in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) and its progeny is inappropriate as well. Accordingly, Defendants in their individual capacities are not entitled to summary judgment on Plaintiff's excessive force claim.

**Failure to Protect Claim**

A prison official's "'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted).[8] The United States Supreme Court and the Fourth Circuit have rejected a negligence standard in determining deliberate indifference. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Moore v. Winebrenner*, 927 F.2d 1312, 1315–17 (4th Cir. 1991). Thus, merely negligent behavior on the part of a prison official in failing to protect a prisoner from a risk of harm does not present a constitutional violation. *See Whitley*, 475 U.S. at 319 ("[C]onduct that does not purport to be punishment at all must involve more

---

[8] Although *Farmer* dealt specifically with a prison official's failure to protect an inmate from harm by a fellow inmate, the deliberate indifference standard has been applied in cases where an officer fails to intervene in an altercation between an inmate and another officer. *See, e.g.*, *Buckner v. Hollis*, 983 F.2d 119 (8th Cir. 1993).

15

than ordinary lack for due care . . . . [O]bduracy and wantonness, not inadvertence . . . characterize the conduct prohibited by [the Eighth Amendment]."); *see also Moore*, 927 F.2d at 1316 (citing Fourth Circuit cases adopting the Supreme Court's reasoning in *Whitley*). The Supreme Court has summarized deliberate indifference as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.

*Farmer*, 511 U.S. at 837.

Here, as stated above, the facts are in dispute as to whether the officers used excessive force when removing Plaintiff from his cell. Similarly, the facts are in dispute as to whether officers knew of and disregarded an excessive risk to Plaintiff's safety. Plaintiff is unsure about which of the officers who entered his cell used force but has alleged that even if they did not participate, "they sure did stand inside of my cell room an[d] watch." [Doc. 1 at 5.] If a fact finder determines the officers hit Plaintiff from behind after he complied with directives, the fact finder could likewise conclude that any officers who watched acted with deliberate indifference by failing to intervene in the altercation. Because this matter must await determination of the facts now in conflict, qualified immunity as set forth in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) and its progeny is

inappropriate as well. Accordingly, Defendants in their individual capacities are not entitled to summary judgment on Plaintiff's failure to protect claim.[9]

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that Defendants' motion for summary judgment be GRANTED as to Defendants in their official capacities and DENIED as to Defendants in their individual capacities. If this Report and Recommendation is adopted by the District Judge, it is also recommended counsel be appointed for Plaintiff for the trial of this action.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>
United States Magistrate Judge

January 23, 2013
Greenville, South Carolina

---

[9] Defendants also argue that Plaintiff is not entitled to bring a claim for denial of medical care or tort claims under state law. [Doc. 34-1 at 18–21.] Because Plaintiff does not raise these issues in his Complaint, the Court declines to address Defendants' arguments on these issues. Further, the Court declines to address Defendants arguments regarding respondeat superior [*id.* at 21] because it appears no Defendant is being named in the Complaint solely as a supervisor of any other Defendant.

17